LOCAL 589, AMALGAMATED TRANSIT UNION & others[1] vs.
MASSACHUSETTS BAY TRANSPORTATION AUTHORITY.

Suffolk. January 10, 1986. — April 28, 1986.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Arbitration,* Authority of arbitrator, Vacating award. *Jurisdiction,* Review
of arbitrator's decision. *Massachusetts Bay Transportation Authority,*
Arbitration, Managerial prerogative.

In an action by a union of employees of the Massachusetts Bay Transpor-
tation Authority to enforce an arbitrator's award in its favor, the authority
was barred from seeking to vacate the award on several grounds, includ-
ing the ground that the arbitrator lacked jurisdiction to make the award,
inasmuch as the authority had failed to make an application to vacate
the award within the thirty days required by G. L. c. 150C, § 11 (*b*).
[429-432]

CIVIL ACTION commenced in the Superior Court Department
on November 16, 1983. Motions for summary judgment were
heard by *B. Joseph Fitzsimmons, Jr., J.*

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Douglas Taylor* of the District of Columbia (*Beth S. Slavet*
of the District of Columbia & *John F. McMahon* with him)
for the plaintiffs.

*Michael J. Grealy* (*Michael Ward* with him) for the defend-
ant.

O'CONNOR, J. This case involves a dispute between Local
589, Amalgamated Transit Union and its officers (union) and
the Massachusetts Bay Transportation Authority (MBTA) over

[1] Paul M. Connolly, Paul Frazier, John J. O'Leary, Richard J. Guiney,
Anthony B. Romano, Redmond R. Condon, Richard C. Branson, John S.
Weber, Stanley V. Stearns, and Bernard Corbett, officers of Local 589,
Amalgamated Transit Union, AFL-CIO.

who should perform the ballast, rail, and tie work on the MBTA's blue line reconstruction project. Instead of utilizing members of the MBTA's maintenance department, represented by the union, to perform the work, the MBTA contracted with a private company to have the work performed. The dispute was the subject of an arbitration hearing held on April 27, 1983; on August 8, 1983, the arbitrator issued a decision in favor of the union. In November, 1983, the union instituted the present action in the Superior Court seeking to enforce the arbitration award. In its answer, the MBTA raised several affirmative defenses, including an allegation that the arbitrator lacked jurisdiction to issue the award, and requested the court to vacate the award. Both parties then moved for summary judgment. The court granted the MBTA's motion and set aside the arbitrator's award. Because the MBTA did not move to vacate the award within thirty days after a copy of the award was delivered to it as required by G. L. c. 150C, § 11 (*b*) (1984 ed.), we hold that the MBTA is precluded from attacking the award in the union's enforcement action. Therefore, we remand this case to the Superior Court for the entry of a judgment confirming the arbitration award.

The background of this case can be summarized as follows. Before a transit authority can receive Federal funds under the Urban Mass Transportation Act of 1964, as amended, 49 U.S.C. app. §§ 1601 et seq. (1982), the Secretary of Labor must certify that the authority has made fair and equitable arrangements to protect the interests of the employees. 49 U.S.C. § 1609(c). Consequently, on December 10, 1974, in order to qualify for Federal assistance under this statute, the MBTA entered into an agreement with the union detailing the protections the MBTA would provide to union employees if Federal funding were made available. Also on that date, the MBTA and the union executed a side letter of agreement which provided in substance that, in the event Federal funds were received for the MBTA's track restoration program, the removal and replacement of ballast, rails, and ties were to be performed by employees of the MBTA's maintenance department who were represented by the union.

In 1977, the MBTA filed a grant application for Federal funds with the Urban Mass Transportation Administration (UMTA) to renovate the track along several of the MBTA's rapid transit lines. Prior to the execution of a grant contract for a portion of the requested funds, the Department of Labor stated that it would grant employment safeguard certification for the project on the condition that the terms of the 1974 agreement, as supplemented by the 1974 side letter of agreement, be made part of the grant contract by reference. The MBTA agreed to this condition, the project was certified, and a capital grant contract was executed in the spring of 1978.

Since 1978, the original grant contract has been amended several times. Each amendment to the 1978 contract resulted from further requests by the MBTA to UMTA for additional funds for track renovation and rehabilitation. For the first three amendments to the 1978 grant contract, the Department of Labor separately certified the required employment protections by incorporating the terms of the agreement and side letter executed by the MBTA and the union in 1974. In 1983, for the fourth contract amendment (amendment four), which provided funding for the blue line project at issue, the UMTA suggested that separate Department of Labor certification was not necessary because the amendment was a continuation of the MBTA's track improvement project which the Department had certified in 1977. The Department of Labor agreed with the UMTA's position, and funds were subsequently released without further certification.

In 1980, the Legislature passed St. 1980, c. 581, which prohibits the board of directors of the MBTA from bargaining collectively with its employees over certain inherent management rights. Among the inherent management rights enumerated by the statute is the MBTA's right to determine whether goods or services should be made, leased, contracted for or purchased on either a temporary or permanent basis. G. L. c. 161A, § 19 (vi) (1984 ed.). Following the provisions of § 19 (vi), the MBTA engaged a private firm to perform the track work for the blue line project. The union then invoked arbitration on this issue pursuant to the parties' collective bargaining agreement incorporated by reference in the 1974 agreement.

397 Mass. 426                                        429

Local 589, Amalgamated Transit Union v. Massachusetts Bay Transportation Authority.

After a hearing, the arbitrator, on August 8, 1983, issued an award in favor of the union. Reasoning that amendment four was a continuation of the original grant contract executed in 1978, the arbitrator concluded, in accordance with *Local Div. 589, Amalgamated Transit Union* v. *Massachusetts,* 666 F.2d 618 (1st Cir. 1981), cert. denied, 457 U.S. 1117 (1982), that amendment four was not affected by St. 1980, c. 581. The arbitrator held that the MBTA was bound by the 1974 side letter of agreement to give the ballast, rail, and tie work contemplated by amendment four to the employees of the maintenance department represented by the union. Consequently, the arbitrator ordered the MBTA to make whole any employee who could demonstrate a compensable loss suffered as a result of the MBTA's action. When the MBTA refused to comply with the award, the union, in November, 1983, brought this action in the Superior Court to enforce it.

In its answer to the union's enforcement action, the MBTA asked the court to vacate the arbitrator's award on several grounds, including the ground that the arbitrator did not have jurisdiction to make it. Both sides then moved for summary judgment and the judge granted the MBTA's motion. Disagreeing with the arbitrator, the judge concluded that amendment four was a separate contract executed after the enactment of St. 1980, c. 581, and that therefore the MBTA was barred by that statute from bargaining collectively as to the track work at issue. The union appealed this judgment to the Appeals Court, and we transferred the case to this court on our own motion.

The union argues on appeal, as it did in the Superior Court, that the MBTA's efforts to vacate the award came too late. We agree. Because this case concerns arbitration invoked under the parties' collective bargaining agreement, this case is governed by the provisions of G. L. c. 150C (1984 ed.). *Massachusetts Bay Transp. Auth.* v. *Local 589, Amalgamated Transit Union,* 20 Mass. App. Ct. 418, 422-423 (1985).[2] Gen-

[2] The union initially took the position that G. L. c. 251 (1984 ed.), applicable to commercial arbitration, is the relevant statutory basis for this

eral Laws c. 150C, § 11 (*b*), states that "[a]n application [to vacate an award] shall be made within thirty days after delivery of a copy of the award to the applicant, provided that, if such application is based upon a claim of corruption, fraud or other undue means it shall be made within thirty days after such grounds are known or should have been known." The question presented for decision is whether the court should create an exception to the time limitations contained in § 11 (*b*) for challenges to the jurisdiction of an arbitrator.

The MBTA concedes that it did not comply with the thirty-day time limit. According to the MBTA, however, the thirty-day time limit for vacating an arbitration award is not applicable when a party challenges the jurisdiction of the arbitrator. In support of this position, the MBTA correctly notes that this court has stated on previous occasions that jurisdictional challenges are "always open" for judicial review. See, e.g., *Local 589, Amalgamated Transit Union* v. *Massachusetts Bay Transp. Auth.,* 392 Mass. 407, 410-411 (1984); *School Comm. of W. Springfield* v. *Korbut,* 373 Mass. 788, 792 (1977); *M.S. Kelliher Co.* v. *Wakefield,* 346 Mass. 645, 647 (1964). However, this court has not, as the MBTA suggests, created a jurisdictional exception to the timeliness requirement contained in G. L. c. 150C, § 11 (*b*). The court's statements that jurisdictional questions are "always open" were in reference to the permissible scope of judicial review, not the issue of timeliness. The "always open" language used by the court merely states an exception to the usual rule that arbitration awards will not be set aside for errors of law or fact. *Massachusetts Bay Transp. Auth.* v. *Local 589, Amalgamated Transit Union, supra* at 424 n.6. Therefore, the decisions of this court cited by the MBTA are inapposite to the present issue.

---

decision. In its appellate reply brief, however, the union realized its error and stated that G. L. c. 150C, applicable to arbitration arising under collective bargaining agreements, is the governing statute. General Laws c. 251, § 12 (*b*), and G. L. c. 150C, § 11 (*b*), are virtually identical. Therefore, we conclude no prejudice was suffered by the MBTA by the union's inadvertence, and we consider the case in terms of the provisions set forth in c. 150C.

The MBTA also cites *Painters Local No. 257* v. *Johnson Indus. Painting Contractors,* 16 Mass. App. Ct. 67 (1983), in support of its position that jurisdictional questions are open regardless of when they are raised. In that case, the issue of timeliness was before the court and the court held that a petition to vacate an arbitrator's decision on jurisdictional grounds is not subject to the thirty-day filing requirement of § 11 (*b*). *Id.* at 72. We decline to follow that decision. The Legislature did not see fit to include jurisdictional challenges as an exception to the § 11 (*b*) filing requirements. The statutory language is unambiguous. We decline to create an exception through judicial decision.

The purpose of the thirty-day period prescribed by § 11 (*b*) is clear. Parties are allowed only a short period of time to move courts to vacate an award in order to accord the arbitration award finality with reasonable promptness. *Bernstein* v. *Gramercy Mills, Inc.,* 16 Mass. App. Ct. 403, 409 (1983). "[T]his policy would seem to condemn the conduct of the defendant who ignored an award disfavorable to it, failed to move to vacate the award, and then sought to be given its day in court when the plaintiff brought suit in frustration to have the arbitration award enforced. If the defendant's defenses were of such vital importance to it, the defendant nevertheless had an opportunity to raise them in the manner contemplated by statute." *Id.* at 409-410, quoting *Chauffeurs Local 135* v. *Jefferson Trucking Co.,* 628 F.2d 1023, 1027 (7th Cir. 1980), cert. denied, 449 U.S. 1125 (1981). To adopt an exception to § 11 (*b*), as the MBTA suggests, would defeat the important policy goals embodied in § 11 (*b*) by creating "an exception capable of swallowing the rule." *Massachusetts Bay Transp. Auth.* v. *Local 589, Amalgamated Transit Union, supra* at 424 n.6, 425.[3] Therefore, to ensure the stability and finality of the arbitration process, we hold that all challenges to an arbitrator's award must be brought within the time frame specified by the statute.

---

[3] In *Massachusetts Bay Transp. Auth.* v. *Local 589, Amalgamated Transit Union, supra* at 424 n.6, the Appeals Court presents an excellent discussion of the timeliness issue raised by the present case.

Consequently, we decide that the MBTA is barred from attacking the arbitrator's decision because it failed to comply with § 11 (*b*)'s thirty-day time limitation. We reverse the judgment of the Superior Court and remand the case for the entry of a judgment confirming the arbitrator's award dated August 8, 1983.

*So ordered.*